**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-24085 MER |
| DAVID ROZINSKI ) | |
| MONICA ROZINSKI ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| DAVID ROZINSKI ) | |
| MONICA ROZINSKI ) | |
| ) | |
| Movants, ) | |
| ) | |
| v. ) | |
| ) | |
| ANB BANK, formerly known as ) | |
| AMERICAN NATIONAL BANK, ) | |
| ) | Signed/Docketed |
| Respondent. ) | February 12, 2013 |

**ORDER**

     THIS MATTER comes before the Court on the *Debtors' Verified Motion for Valuation of Collateral and Determination of Secured Status Under 11 U.S.C. § 506* (the "Motion") filed by Debtors David and Monica Rozinski (collectively, the "Debtors") and *ANB Bank's Response Objecting to Debtors' Motion for Valuation of Collateral and Determination of Secured Status* ("Response") filed by creditor ANB Bank formerly known as American National Bank ("ANB Bank"). The Court has considered the file, the testimony and exhibits admitted at the evidentiary hearing on the Motion, and the legal arguments presented by the parties, and hereby makes the following findings of fact and conclusions of law.

**JURISDICTION**

     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (L) and (O) as it concerns administration of the estate, allowance or disallowance of claims against the estate, the determination of the validity, extent, or priority of liens, confirmation of a plan, and the adjustment of the debtor-creditor relationship.

**STIPULATED AND UNCONTESTED FACTS**

In connection with the evidentiary hearing, the parties filed a pleading entitled *Stipulations of Fact and Stipulations to Admissibility of Exhibits* (the "Stipulated Facts").[1] Based on the Stipulated Facts and the exhibits admitted into evidence at the hearing, the Court finds the following to be undisputed:

1. The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on July 3, 2012.

2. On August 10, 2007, the Debtors executed and delivered a home equity line of credit agreement (the "Note") payable to ANB Bank in the principal amount of $30,000.00.

3. ANB Bank is the present holder of the Note.

4. The Note is secured by a second position deed of trust (the "Deed of Trust") encumbering the real property and the Debtors' primary residence located at 4750 Fillmore Street, Denver, Colorado 80216 (the "Residence").

5. The Deed of Trust was duly perfected by recording in the Denver County real estate records at reception number 2007137837 on September 2, 2007.

6. The last payment made by the Debtors was on or about May 18, 2012.

7. The amount owed under the Note and Deed of Trust as of July 3, 2012 was $29,476.90.

8. The amount owed under the senior mortgage in favor of Midfirst Bank also known as Midland Mortgage Company ("Midland") as of the Petition Date is $56,629.00.[2]

---

[1] Docket No. 60. The parties stipulated to the admission of their Stipulated Facts, which includes ANB Bank's Exhibits A and B, and the Court admitted those exhibits and stipulated facts into evidence. During the course of the hearing, the Court also admitted ANB Bank's Exhibit C.

[2] *See* Proof of Claim No. 9-1. In their Motion, the Debtors assert Midland's claim on the Petition Date was $60,000. However, Midland's filed proof of claim states its secured claim is $56,629. At the outset of the hearing, ANB Bank requested the Court take judicial notice of the following proofs of claim: 1) Proof of Claim No. 9-1 filed by Midland; and 2) Proof of Claim No. 15-3 filed by ANB Bank. The Court hereby takes judicial notice of such claims. To date, the Debtors have not objected to these claims.

**DISCUSSION**

In accordance with the Motion, the Debtors' Chapter 13 plan contains a provision modifying the value of the Residence under § 506 with respect to ANB Bank's junior lien.  Pursuant to 11 U.S.C. § 1322(b)(2),[3] a debtor's Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."[4]  For determination of valuation of real property in the context of plan confirmation, "[a] claim secured by a lien is secured only to the extent of the value of the property to which the lien in question attaches and the amount of any senior liens.  If the lien does not attach to any value, it is void by operation of 11 U.S.C. § 506(d)."[5]

In the instant matter, the parties agree the sole issue presented is a determination of the value of the Debtors' Residence under § 506(a)(1).  If the value of the Residence is greater than Midland's senior lien ($56,629.00), even by $1.00, ANB Bank's claim is secured and its junior lien may not be avoided.[6]  Conversely, if the value of the Residence is less than $56,629.00, ANB Bank's claim is wholly unsecured and its junior lien shall be void upon the Debtors' successful completion of their Chapter 13 plan and resulting discharge.

The Debtors contend the value of the Residence is $48,000.00, based on Zillow.com and the sales of similar homes in the area.  In other words, the Debtors argue ANB Bank's junior lien may be stripped because the lien is wholly unsecured under § 506(a).  ANB Bank asserts the value of the Residence is $104,000.00 based on a certified appraisal of the Residence dated July 24, 2012.[7]  ANB Bank argues its second position lien is protected from the Debtors' proposed modification under § 1322(b)(2).  Both parties applied a fair market value standard.

---

[3] Unless otherwise noted in the text, all future statutory references are to title 11 of the United States Code.

[4] § 1322(b)(2); *see also Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 327 (1993).

[5] *In re Waterman*, 447 B.R. 324, 326 (Bankr. D. Colo. 2011) *aff'd*, 469 B.R. 334 (D. Colo. 2012).

[6] *See id.*

[7] *See* Exhibit C.

**A.  Determination of Secured Status Pursuant to § 506(a).**

The statutory basis for determining whether ANB Bank maintains a secured interest in the Residence is found in § 506. This provision allows a debtor to request a determination that an otherwise secured debt is unsecured in light of the valuation of the property and proposed plan affecting the creditor's interest. Specifically, § 506(a)(1) provides:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.[8]

In *Associates Commercial Corp. v. Rash*, the United States Supreme Court examined the determination of value under § 506(a) for collateral retained by a Chapter 13 debtor exercising the § 1325(a)(5)(B) cram down option.[9] Based on the debtor's proposed retention of the collateral, the *Rash* Court articulated a replacement value standard and held "under § 506(a), the value of property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like asset for the same 'proposed . . . use.'"[10] The Supreme Court expressly left "to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented."[11]

This Court has flexibility to consider various evidence on value because determinations of value in bankruptcy are not mathematically certain. As the Bankruptcy Court for the District of Kansas noted:

---

[8] § 506(a)(1).

[9] *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997).

[10] *Id.* at 965 (rejecting the foreclosure-value standard when a Chapter 13 debtor proposes to retain the collateral).

[11] *Id.* at 965 n.6.

Page 4 of  16

> [A]ppraising real estate involves not only the application of historical value information, but also the use of careful judgment. In other words, appraisal is an inexact science. It is left to the trier of fact to determine which appraisal is better grounded both in fact and method based upon the Court's observation and evaluation of the witnesses and their respective reports.[12]

In order to demonstrate value, courts generally consider "appraisals, investment banker opinions, expert testimony, testimony of the parties, . . . and less formalized evidence regarding prices obtained from the sale of similar property."[13]

Here, the Debtors relied on the lay testimony of Mrs. Rozinski to support their valuation of the Residence, based on her personal knowledge from residing at the Residence for fifty-two years. In support of its position regarding the value of the Residence, ANB Bank submitted the appraisal and presented expert testimony from Lisa Desmarais ("Ms. Desmarais"), qualified as an expert in residential real estate valuation.

**B.   Burden of Proof for Determinations of Value Under § 506(a) in the Chapter 13 Plan Confirmation Context.**

The burden of proof under § 506(a) differs depending on the circumstances of the case.[14] In order to satisfy their burden under § 506(a) in the Chapter 13 plan confirmation context, this Court has historically followed those courts placing the burden of proof on the debtor to demonstrate valuation by a preponderance of the evidence.[15] Under this standard, the Debtors would

---

[12]  *In re Hoch*, 2009 WL 2252144 at *2 (Bankr. D. Kan. July 27, 2009).

[13]  *Id.* at 506-89.

[14]  *See* 4 COLLIER ON BANKRUPTCY 506.03[9] at 506-88 (16th ed. rev.) (The relevant burden of proof for a valuation proceeding depends on the circumstances, *i.e.* motions for relief from stay, requests for adequate protection, or determinations of value related to a plan.). This division notes it adopted the shifting burden of proof for valuations in the relief from stay context under § 362(d)(1) as set forth in *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 870-71 (Bankr. D. Colo. 2001). *See, e.g., In re H.T. Pueblo Properties, LLC*, No. 11-24718-MER, 2011 WL 6962754 (Bankr. D. Colo. Dec. 30, 2011); *In re Plateau Energy Partners, Inc.*, No. 11-13182-MER, 2011 WL 5149080 (Bankr. D. Colo. Oct. 28, 2011); *In re DB Capital Holdings, LLC*, 454 B.R. 804, 816 (Bankr. D. Colo. 2011); *In re Gunnison Ctr. Apartments, LP*, 320 B.R. 391, 395 (Bankr. D. Colo. 2005).

[15]  *Young v. Camelot Homes, Inc. (In re Young)*, 390 B.R. 480, 486 (Bankr. D. Me. 2008) (Chapter 13 debtors bore the burden of proving value of collateral when debtors sought the confirmation of their plans.); *Weichy v. Nextier Bank, N.A. (In re Weichey)*, 405 B.R. 158, 164 (Bankr. W.D. Pa. 2009) (The debtor bears the burden of proof on the issue of

need to prove by a preponderance of the evidence the Residence is worth less than the amount owed under the Midland's first deed of trust.

This Court has revisited the burden of proof in the plan confirmation context of § 506(a) because the United States Court of Appeals for the Third Circuit suggests a reasonable alternative to the placing the entire burden of proof on the debtor. After considering the reasoning of the Third Circuit in *In re Heritage Highgate*,[16] this Court finds the shifting burden of proof persuasive. The Third Circuit explained the shifting burden of proof as follows:

> The initial burden should be on the party challenging a secured claim's value, because "11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f) grant prima facie effect to the validity and amount of a properly filed claim." *In re Williams*, 381 B.R. 742, 744 (Bankr. W.D. Ark. 2008). It is only fair, then, that the party seeking to negate the presumptively valid amount of a secured claim—and thereby affect the rights of a creditor—bear the initial burden. *See In re Brown*, 244 B.R. 603, 609–10 (Bankr. W.D. Va. 2000). If the movant establishes with sufficient evidence that the proof of claim overvalues a creditor's secured claim because the collateral is of insufficient value, the burden shifts. The creditor thereafter bears "the ultimate burden of

---

valuation under § 506(a)), *In re El Charro, Inc.*, 2007 WL 2174911, *4 (Bankr. D. Kan. 2007) ("As a plan proponent, the debtor has the burden to demonstrate by a preponderance of the evidence its valuation of the Bank's collateral.").

[16] *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139-40 (3rd Cir. 2012) (holding "a burden-shifting framework controls valuations of collateral to decide the extent to which claims are secured pursuant to § 506(a)."). The Third Circuit examined three approaches to the burden of proof for § 506(a):

> Some courts have concluded that the secured creditor bears the burden of proof. *See, e.g., In re Sneijder*, 407 B.R. 46, 55 (Bankr. S.D.N.Y. 2009). Other courts have held that the party challenging the value of a claim, usually the debtor, bears the burden of proof. *See, e.g., In re Weichey*, 405 B.R. 158, 164 (Bankr. W.D. Pa. 2009). A third group of courts has settled on a burden-shifting analysis, pursuant to which "the debtor bears the initial burden of proof to overcome the presumed validity and amount of the creditor's secured claim," but "the ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim." *In re Robertson*, 135 B.R. 350, 352 (Bankr. E.D. Ark. 1992).

*Id. See also In re Serda*, 395 B.R. 450, 454 (Bankr. E.D. Cal. 2008) (the Chapter 13 debtor bore the initial burden of overcoming any presumption established by the stated value of her residence in mortgage lender's proof of claim, but lender bore ultimate burden of persuasion to demonstrate the value of collateral that secured its claim, and had to do so by the preponderance of the evidence).

persuasion . . . to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim." *In re Robertson*, 135 B.R. at 352.[17]

In departing from its previous allocation of burden of proof, the Court joins those courts adopting the burden-shifting standard for determinations of value in the Chapter 13 plan confirmation context of § 506(a).[18]

In the instant matter, the Court finds the shifting burden of proof is appropriate because ANB Bank is a creditor of the Debtors, and filed Amended Proof of Claim No. 15-3. Amended Proof of Claim 15-3 was executed and filed in accordance with FED. R. BANKR. P. 3001, and the Debtors have not objected to this claim. Accordingly, Amended Proof of Claim 15-3 constitutes *prima facie* evidence of the validity and amount of ANB Bank's claim.[19] Under this standard, the Debtors would need to present sufficient evidence establishing the proof of claim overvalues ANB Bank's secured claim because the Residence is worth less than the amount owed under the Midland's first deed of trust. If the Debtors meet this burden, the ANB Bank bears the ultimate burden of persuasion to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the Residence.

**C.     The Residence.**

The Residence is a one-story home built in 1948, located in the Vasquez Plaza subdivision, with 1,111 finished square feet above-grade and 220 square feet in an unfinished basement (a total of 1,331 square feet), including three (3) bedrooms, and one (1) full bathroom.[20] The Residence has a driveway, but no garage. The Debtors purchased the Residence from Mrs. Rozinski's parents, and she has resided at the Residence for fifty-two consecutive years. Mrs. Rozinski testified the Residence is fourteen houses north of an elevated stretch of Interstate Highway 70 ("I-70"). She described the overall condition of the Residence as "fair" and the condition of the front yard as "good."

---

[17] *Id.* (noting the allocation of "the ultimate burden of persuasion to the creditor whose proof of claim has been challenged is consistent with the rest of the Code.").

[18] The Court notes the same shifting burden of proof may be applicable in the Chapter 11 plan confirmation context, but does not reach this issue based on the facts of the instant matter.

[19] *See In re Richter*, 478 B.R. 30, 40-41 (Bankr. D. Colo. 2012) (discussing validity of filed proofs of claim).

[20] Exhibit C, Residential Appraisal Report p. 1 of 4.

As part of her testimony, Ms. Desmarais noted the Residence had "some updates," including a bathroom remodel in 1993, the replacement of three windows in 1999, and a kitchen remodel in 2009.[21]  Her appraisal describes the Debtors' neighborhood as "one of the original neighborhoods to be developed in the city of Denver (nearly 130 years ago)[.]  [T]he neighborhood now consists of a mix of starter-homes in varying stages of condition located near large industrial and commercial properties.  The area is traversed by I-70 and active railways."[22]

**D.    Debtors' Valuation.**

The Debtors did not offer a written appraisal for the purpose of valuing the Residence.  Instead, Mrs. Rozinski relied on her own personal knowledge of the Residence and her subdivision, and determined the value of the Debtors' Residence is $48,000.  Mrs. Rozinski stated she believes her opinion reflects the realities of the Vasquez Plaza subdivision and the true impact of I-70 on the value of the Residence, and asserts her value is accurate.  Mrs. Rozinski testified the primary basis for this value is the negative impact of a construction project to widen I-70 and expand the highway further north.  Mrs. Rozinski explained the development of I-70 can only go north because a large dog food factory is located immediately south of I-70.  She testified the elevated highway is "falling apart" resulting in concrete on the street and an "unsafe" environment.

Mrs. Rozinski also testified she compared the Residence to two comparable properties.  The first comparable property is located five blocks west at 4736 Josephine Street, Denver, Colorado 80216 (the "4736 Josephine Property"), which Mrs. Rozinski testified sold "recently" for $39,000.[23]  The second comparable property is located at 4770 Fillmore Street, Denver, Colorado (the "4770 Fillmore Property") on the same block and only two houses down from the Residence.  Mrs. Rozinski testified the 4770 Fillmore Property is smaller than the Residence and has been unsuccessfully listed for sale for over two years at a listing price is $100,000.

---

[21] *See also* Exhibit C.

[22] Exhibit C, Residential Appraisal Report p. 1 of 4.

[23] Mrs. Rozinski testified the 4736 Josephine Property sold "recently" at a purchase price of $39,000, and she referenced an attachment to the Motion during her testimony regarding the 4736 Josephine Property.  Indeed, the Debtors attached a copy of a two page Zillow.com property summary for the 4736 Josephine Property to their Motion as Exhibit A.  *See* Motion, Docket No. 10.  The summary indicates as of April 3, 2012, a sale of the 4736 Josephine Property was pending for $39,000.  The statements contained in the Motion were verified by the Debtors as true.  While no precise sales date was provided during the hearing, the Court assumes the sale closed after the date the Motion was filed (July 3, 2012) and before the date of the hearing (January 7, 2013).

**E.    ANB Bank's Valuation.**

Ms. Desmarais is a certified residential appraiser with an SRA designation, among other credentials that qualified her as an expert in the field of residential real estate valuation. She performed an independent appraisal of the Residence and inspected the interior and exterior of the Residence. After taking into account adjustments between the subject and comparable properties, Ms. Desmarais concluded the "market value" of the Residence is $104,000.00 as of July 24, 2012.[24]

Her appraisal is thirty-two (32) pages in length and compares the Residence to eight (8) properties she contends are comparable. She made certain monetary "adjustments" to each property to account for features more or less favorable than the features of the subject Residence. Ms. Desmarais used four sales and four active listings as her purported comparable properties. Although she did not do an interior inspection of these properties, she did a "drive-by" viewing of them and also contacted some listing agents for further details to create her appraisal.

Ms. Desmarais' four sales include the following:

1.    <u>4325 Adams Street</u>.  This sold comparable is an 882 square foot ranch style home built in 1952, with 3 bedrooms, 1 bathroom, and a 1-car garage. This property was bank owned and sold on December 19, 2007, for $53,000. The property was updated and sold again on March 10, 2008, for $132,500. On July 22, 2011, this property sold for $65,000 at a foreclosure sale. The property was updated again and sold on March 30, 2012, for $130,000. The stated "adjusted sale price" is $108,000 with a negative net adjustment of 16.9%. Ms. Desmarais made downward adjustments to account for the garage, superior updates, and sale concessions, and upward adjustments to account for the lower number of square feet, no porch or patio and the heating system. 4325 Adams Street is approximately 10 blocks southeast from the Residence, and south of I-70.

2.    <u>4945 Steele Street</u>.  This sold comparable is a 955 square foot ranch style home built in 1947, with 3 bedrooms, 2 bathrooms, and a 1-car garage. The property sold in September 2008 and again in August 2009 for $118,000. The listing information indicates the

---

[24] *See* Exhibit C. The appraisal defines "market value" as "[t]he most probably [sic] price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. . . ."

property was most recently sold at a "short sale" on March 26, 2012, for $86,000. The stated "adjusted sale price" is $100,500 with a positive net adjustment of 16.9%. Ms. Desmarais made downward adjustments to account for the extra bathroom and garage, and upward adjustments to account for the lower number of square feet, the short sale and the heating system. 4945 Steele Street is approximately 6 blocks northeast from the Residence, and north of I-70.

3. <u>4924 Fillmore Street</u>. This sold comparable is a 955 square foot ranch style home built in 1947, with 2 bedrooms, 1 bathroom, and a 2-car garage. The property sold in August 2011 for $79,900. The stated "adjusted sale price" is $109,500 with a positive net adjustment of 37%. Ms. Desmarais made a downward adjustment to account for the 2-car garage, and upward adjustments to account for no updates, the lower number of square feet, and the heating system. 4924 Fillmore Street is approximately a quarter mile north of the Residence, and north of I-70.

4. <u>4720 Thompson Court</u>. This sold comparable is a 1,085 square foot ranch style home built in 1948, with 3 bedrooms, 1 bathroom, and a detached 1-car garage. The property was listed for fifteen days, and the listing information indicates the property was most recently sold at a "short sale" in June 2012 for $75,000. The stated "adjusted sale price" is $99,000 with a positive net adjustment of 32%. Ms. Desmarais made a downward adjustments to account for the detached garage, and upward adjustments to account for the minimal updates and the heating system. 4720 Thompson Court is approximately two blocks west of the Residence, and north of I-70.

Ms. Desmarais' four active listings include:

1. <u>4833 Steele Street</u>. This active comparable is a 887 square foot ranch style home built in 1947, with 3 bedrooms, 1 bathroom, and a driveway. The property was originally listed on April 20, 2012, for $92,000. The property was under contract in May, but the "deal fell through." Following repairs, the property was re-listed on July 21, 2012, for $100,000. The stated "adjusted sale price" is $105,300 with a positive net adjustment of 5.3%. Ms. Desmarais made a downward adjustment to account for the active listing, and upward adjustments to account for the lower number of square feet and the heating system. 4833 Steele Street is approximately 3 blocks northeast from the Residence, and north of I-70. As of the date of the appraisal, 4833 Steele Street had not sold and was still an "active" listing.

2. <u>4385 Adams Street</u>.  This active comparable is a 1,061 square foot ranch style home built only fourteen years ago, with 3 bedrooms 3 bedrooms, 1.1 bathrooms, and a driveway.  The property is currently listed for $112,000.  According to the appraisal, "[t]he extraordinary assumption is being made that this home is in similar condition as compared to the [Residence]."  The stated "adjusted sale price" is $107,000 with a negative net adjustment of 4.5%.  Ms. Desmarais made downward adjustments to account for the active listing and the additional partial bathroom, and an upward adjustment to account for the heating system.  4385 Adams Street is approximately 8 blocks southeast from the Residence, and south of I-70.  As of the date of the appraisal, 4385 Adams Street had not sold and was still an "active" listing.

3. <u>4922 Saint Paul Street</u>.  This active comparable is a 756 square foot above-grade with an 80 square foot unfinished basement (a total of 836 square feet) ranch style home built in 1947, which has been "fully updated and remodeled."  The home includes 3 bedrooms, 1 bathroom, and a 1-car garage.  The property is currently listed for $145,000.  The stated "adjusted sale price" is $123,900 with a negative net adjustment of 14.6%.  Ms. Desmarais made downward adjustments to account for the active listing, superior updates and the garage, and upward adjustments to account for the lower number of square feet and the heating system.  4922 Saint Paul Street is approximately 4 blocks northeast from the Residence, and north of I-70.  As of the date of the appraisal, 4922 Saint Paul Street had not sold and was still an "active" listing.

4. <u>4664 Clayton Street</u>.  This active comparable is a "fully updated and remodeled" 1,107 square foot ranch style home built in 1946, with 3 bedrooms, 1.5 bathrooms, and a driveway.  The property is currently listed for $156,000.  The stated "adjusted sale price" is $123,500 with a negative net adjustment of 20.8%.  Ms. Desmarais made downward adjustments to account for the active listing, superior updates and the extra half bathroom, and an upward adjustment to account for the heating system.  4664 Clayton Street is approximately 2 blocks southwest from the Residence, and north of I-70.  As of the date of the appraisal, 4664 Clayton Street had not sold and was still an "active" listing.

**F.    Valuation Analysis.**

The Court finds both Mrs. Rozinski and Ms. Desmarais to be honest, credible witnesses.  Thus, the instant matter turns on the conflicting valuation evidence presented by the parties.

    The initial burden is on the Debtors as the parties challenging the validity of ANB Bank's claim. In support of their valuation, Mrs. Rozinski compared the Residence to the 4736 Josephine Property sold recently for $39,000 and the 4770 Fillmore Property (two doors from the Residence) which was listed for sale for over two years at a price of $100,000. The Court finds the testimony regarding the sale of the 4736 Josephine Property more persuasive than the testimony regarding the 4770 Fillmore Property listing because the actual sale of the 4736 Josephine Property provides a benchmark for accurately valuing the Residence. Although the two year listing indicates 4770 Fillmore Property has not sold for $100,000, the listing price alone provides little guidance on the actual value of 4770 Fillmore Property and in turn, the Residence.

    Ironically, ANB Bank's appraisal provides the most reliable evidence supporting the Debtors' valuation of the Residence. The appraisal states as follows:

> Vasquez Plaza has, as per Realist data, only 34 homes. These homes were built between 1946 and 1968. Of these 34 homes, one sold in the past year and a half. (Note, the last sale to occur was at 4640 Fillmore Street for $47,050 on 02/18/2011).
>
> Therefore, it is necessary to use comparable sales from outside the immediate small sub-area (of Vasquez Plaza), but within the subjects [sic] immediate neighborhood and market rate. There are a very limited number of comparable sales. The sales used are the best available.[25]

The Court notes the property located at 4640 Fillmore Street, Denver, Colorado (the "4640 Fillmore Property") is on the same street as the Residence and north of I-70. The Court stresses 4640 Fillmore Property was not only the last property sold in the Debtors' immediate subdivision, but the only sold property located in Vasquez Plaza since February 18, 2011. For these reasons, the Court finds the 4640 Fillmore Property is a true comparable property, and the best evidence to determine the value of the Residence.

    After careful scrutiny of the evidence and recognizing valuation is not an exact science, the Court finds the Debtors met their *prima facie* burden and established with sufficient evidence the value of the Residence is less than Midland's senior lien of $56,629.00 and ANB Bank's claim may be overvalued.

---

[25] Exhibit C, Addendum p. 2 of 6.

Thus, the ultimate burden of persuasion shifted to ANB Bank to demonstrate by a preponderance of the evidence the value of the Residence securing its claim.[26]

In support of ANB Bank's valuation, Ms. Desmarais testified she relied on information from the Multiple Listing Service, or "MLS," and her software programs. However, the Court is troubled by certain key elements of her appraisal, as well as her supporting testimony. First, there are significant disparities relating to the four active listings used as comparable properties. Ms. Desmarais testified the active listings included in her appraisal could be sold for more or less than the listing prices, and between January and July 2012, the average number of days homes remained on the market before sale was thirty-three days. Ms. Desmarais concluded this indicated a "hot" market, which justified the use of listings as comparable properties. In summary, she testified as follows with respect to the active listings in the appraisal:

- 4833 Steele Street (three blocks from the Residence) had been on the market 107 days as of July 24, 2012 at $100,000;

- 4385 Adams Street (the only active listing south of I-70) had been on the market 106 days as of July 24, 2012 at $112,000;

- 4922 Saint Paul Street (four blocks from the Residence) had been on the market 38 days as of July 24, 2012 at $145,000; and

- 4664 Clayton Street (two blocks from the Residence) had been on the market 32 days as of July 24, 2012 at $123,500.

Two of the active listing properties are listed for prices similar to ANB Bank's value, but fall far outside the thirty-three day average listing period. The other two properties were right at the average listing period as of the date of the appraisal in July. Although, Ms. Desmarais testified there was an "active market," the evidence indicates a less than "hot" sales area, particularly at asking prices similar to ANB Bank's asserted value of the Residence. In fact, the appraisal concedes as much, stating "[t]here are a very limited number of comparable sales."[27] Therefore, the Court finds the use of active listings as comparable properties was not warranted, and gives little weight to such evidence.

Second, the use of comparable properties south of I-70 (two properties) are not representative of the home values north of I-70. Both parties seemed

---

[26] Again, the parties stipulated the extent of the lien (or amount of ANB Bank's claim) as of July 3, 2012 was $29,476.90.

[27] Exhibit C, Addendum p. 2 of 6.

to agree at some level the Debtors' subdivision does indeed have "dividing lines" with property values higher south of I-70. On this issue, Ms. Desmarais conceded I-70 was only expanding north, but testified her market approach considered and reflects any impact from the I-70 construction, and the market reaction would effect the sales prices and values of the Residence and the comparables the same way.[28] As set forth above, the Court does not believe there is an active market in the Debtors' neighborhood, and cannot give weight to a market reaction where no active market exists. Thus, the Court questions the accuracy of Ms. Desmarais' appraisal to the extent it contains two properties (one sold and one listed) south of I-70. Relying on the compelling testimony of Mrs. Rozinski as to the impact of the I-70 construction and the differing values between the north and south sides of the highway, the Court does not believe the 4385 Adams Street property (active listing) or the 4325 Adams Street property (sold) used in the appraisal are comparable to the Residence.

Third, Ms. Desmarais did not use a single comparable (listing or sale) from the Vasquez Plaza subdivision. In fact, there was no crossover in any of the comparable properties selected in the appraisal, with the sale and listing of properties on the Debtors' block. With respect to listings, the appraisal does not show the listing (or sale) of the 4736 Josephine Property as of the date of the appraisal. Further, Ms. Desmarais admitted she "did not see" the listing for 4770 Fillmore Property which is only two houses away from the Residence. While the Court is concerned the appraisal did not include these properties as comparables, as set forth above, the Court does not believe active listings would provide an accurate reading on the value of the Residence.

Curiously, and most important to this Court, Ms. Desmarais excluded the sale of the 4640 Fillmore Property for $47,050 as a comparable property in the appraisal. The Court is troubled by the exclusion of this sale in the appraisal because that property is located on the same block as the Residence, was the last property sold in the Vasquez Plaza subdivision, and sold for a value ($47,050), close to the Debtors' asserted value of the Residence ($48,000). Ms. Desmarais failed to provide an adequate explanation for the exclusion the 4640 Fillmore Property (or for that matter, the exclusion of the 4770 Fillmore Property and the 4736 Josephine Property) in her appraisal. The only explanation provided was that her "bracketing" method considers an active market, and the exclusion of these properties was not intentional.[29] The Court finds the

---

[28] The appraisal states "[t]wo of the comparable sales are located south of interstate 70, however, there is no market value difference for homes located a few blocks south of I-70 as compared to the subjects area (just north of Interstate 70)." Exhibit C.

[29] Ms. Desmarais testified she used a software program and a "bracketing" approach for her appraisal. She described the "bracketing" approach as an appraisal concept which includes sales of lower and higher valued properties to insure a proper range of value for the

exclusion of 4640 Fillmore Property as a comparable property while not intentional, is fatal. Particularly in light of her acknowledgment of the sale of the 4640 Fillmore Property in the appraisal.

Fourth, with little weight given to the four active listings and no consideration of the sold property located south of I-70, the Court turns to the remaining three sold properties listed as comparables in the appraisal. The 4720 Thompson Court property was sold at a short-sale in June 2012 for $75,000 and Ms. Desmarias adjusted the price upward by 35%. As to Ms. Desmarais' inclusion of a short-sale property as a comparable property, the Court is cognizant of former and current market conditions and recognizes the prevalence of lender-owned properties and short-sales. Given the current market conditions, the Court finds the inclusion of a short-sale, standing alone, is not unreliable or in error. However, combined with the other infirmities of the appraisal noted herein, the Court finds suspect the inclusion of this property while excluding the 4640 Fillmore Property and the 4736 Josephine Property. Indeed, the absence of the 4640 Fillmore Property and the 4736 Josephine Property render the remaining comparables suspect, and the Court believes the properties included in the appraisal do not reflect values similar to the Residence.

While neither valuation opinion is sound enough for this Court to place a specific value on the Residence, the Court finds ANB Bank has not met its ultimate burden of persuasion to support a finding for its $104,000 value of the Residence. The Court has been provided with values ranging from $48,000 (based on the Debtors' knowledge of the Residence and their subdivision), and $104,000 (based on Ms. Desmarais' appraisal dated July 24, 2012). The flaws in the appraisal set forth above, and in particular, the failure to include 4640 Fillmore Property and the 4736 Josephine Property are fatal to ANB Bank's evidence of valuation. Therefore, this Court cannot deem ANB Bank's lien secured.

## CONCLUSION

Based on the foregoing, the Debtors have satisfied their initial burden of proof and established with sufficient evidence the value of the Residence is less than $56,629.00 and therefore, the ultimate burden of persuasion shifted to ANB Bank to present evidence supporting their valuation of the Residence. As

---

subject property. She included properties outside the Vasquez Plaza subdivision to calculate a range, and even looked at vacant land and demolished properties. She testified the appraisal software then ignores the extreme high and low values to determine an accurate range. She asserted the range method reflects an active market for the Debtors' neighborhood.

discussed above, the issues with the appraisal are fatal to ANB Bank's position, and the Court concludes ANB Bank did not satisfy its burden. Accordingly,

IT IS ORDERED the *Debtors' Verified Motion for Valuation of Collateral and Determination of Secured Status Under 11 U.S.C. § 506* is GRANTED.

Dated February 12, 2013                    BY THE COURT:

_____
Michael E. Romero
United States Bankruptcy Judge